CLOSED,ON BOND,Restraint_None

# United States District Court
# District of Nevada (Las Vegas)
# CRIMINAL DOCKET FOR CASE #: 2:25–mj–00755–EJY All Defendants

Case title: USA v. Jones

Other court case number: 1:25–cr–314–JMA–CHK Eastern
District of New York

Date Filed: 10/23/2025

Date Terminated: 10/30/2025

---

Assigned to: Magistrate Judge
Elayna J. Youchah

**Defendant (1)**

**Damon Jones**
*TERMINATED: 10/30/2025*

represented by **Heidi A Ojeda**
Federal Public Defender
411 E. Bonneville Avenue
Las Vegas, Nv 89101
702–388–6577
Fax: 702–388–6261
Email: heidi_ojeda@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rohit Rajan**
Office of the Federal Public Defender for the
District of Ne
411 East Bonneville Avenue
Ste 250
Las Vegas, NV 89101
702–388–6577
Fax: 702–388–6261
Email: rohit_rajan@fd.org
*TERMINATED: 10/30/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: FPD*

| **Pending Counts** | **Disposition** |
| --- | --- |
| None | |

| **Highest Offense Level (Opening)** | |
| --- | --- |
| None | |

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

| **Highest Offense Level (Terminated)** | |
| --- | --- |
| None | |

| **Complaints** | **Disposition** |
| --- | --- |
| Rule 5 | Transmittal |

**Plaintiff**

**USA**                                        represented by **Clay Plummer**
                                               DOJ–USAO
                                               501 S Las Vegas BLVD
                                               Suite 1100
                                               Las Vegas, NV 89101
                                               702–388–6536
                                               Email: clay.plummer@usdoj.gov
                                               *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*
                                               *Designation: USA*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/23/2025 | 1 | MINUTES OF PROCEEDINGS – Initial Appearance in Rule 5(c)(3) Proceeding as to Damon Jones held on 10/23/2025 before Magistrate Judge Elayna J. Youchah. Crtrm Administrator: *Jeff Miller*; AUSA: *Clay Plummer*; Def Counsel: *Rohit Rajan, AFPD*; PTS: *Emily McKillip*; Court Reporter/Recorder: *Liberty/CRD*; Recording start and end times: *2:42:28 – 3:03:55*; Courtroom: *3D*. <br><br> Defendant is present in custody and in no restraints during court proceeding. Financial Affidavit filed. The Federal Public Defenders Office is appointed as defense counsel. Waiver of Identity Hearing filed. ORDERED defendant identified as named defendant in indictment/complaint and is held to answer in the Eastern District of New York. Next appearance date in originating district is on 11/24/2025 @ 10:00am in Courtroom #2D, US District Court Eastern District of New York. Government does not seek detention in this case. Defendant is ORDERED released on PR Bond under special conditions. <br><br> **(no image attached)** (Copies have been distributed pursuant to the NEF – JAM) (Entered: 10/24/2025) |
| 10/23/2025 | 2 | Rule 5(c)(3) Documents Received as to Damon Jones. Documents received from Eastern District of New York include Indictment. (RJDG) (Entered: 10/27/2025) |
| 10/23/2025 | 4 | ORDER APPOINTING COUNSEL as to Damon Jones. FPD appointed as counsel for Defendant. Subpoenas issued upon request, with exception to out–of–state subpoenas which will require court approval. Appearance by: Jonell Thomas. Signed by Magistrate Judge Elayna J. Youchah on 10/23/2025. (Copies have been distributed pursuant to the NEF – DLS) (Entered: 10/28/2025) |
| 10/23/2025 | 5 | PR BOND Entered as to Damon Jones (1).(DLS) (Entered: 10/28/2025) |
| 10/23/2025 | 6 | NOTICE of Assertion of Right to Counsel, the Right to Remain Silent, and Request to Have Counsel Present During Questioning as to Damon Jones. (DLS) (Entered: 10/28/2025) |
| 10/23/2025 | 7 | NOTICE of Assertion of Right to be Present in Court Unshackled as to Damon Jones. (DLS) (Entered: 10/28/2025) |
| 10/23/2025 | 9 | WAIVER of Rule 5 and 5.1 Hearings by Damon Jones. (DLS) (Entered: 10/28/2025) |
| 10/27/2025 | 3 | ORDER REQUIRING A DEFENDANT TO APPEAR IN THE DISTRICT WHERE CHARGES ARE PENDING AND TRANSFERRING BAIL as to Defendant Damon Jones. Signed by Magistrate Judge Elayna J. Youchah on 10/23/2025. (Copies have been distributed pursuant to the NEF – ALZ) (Entered: 10/28/2025) |
| 10/30/2025 | 10 | TRANSMITTAL to Eastern District of New York. <br> Your case number: 1:25–cr–314–JMA–CHK. <br> Our case number: 2:25–mj–00755–EJY–1. <br> Please be advised that Defendant Damon Jones was arrested in the District of Nevada, Las Vegas on a warrant issued by the District of Eastern District of New York and appeared before United States Magistrate Judge Elayna J. Youchah on 10/23/2025. The Defendant was released on bond and ordered to appear in your court. |

| | | All documents completed in this district may be accessed via PACER and our website at https://ecf.nvd.uscourts.gov. Should the receiving district require additional documents or assistance, please contact the office of the clerk at InterdistrictTransfer_NVD@nvd.uscourts.gov. (JG) (Entered: 10/30/2025) |
|---|---|---|
| 10/30/2025 | 11 | NOTICE OF ATTORNEY APPEARANCE: Heidi A Ojeda appearing for Damon Jones (Ojeda, Heidi) (Entered: 10/30/2025) |

2:25-mj-0755-EJY

TH:MWG/SMS/IC
F. #2024R00654

**FILED**

*4:11 pm, Oct 09, 2025*

U.S. DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

ERNEST AIELLO,
NELSON ALVAREZ,
    also known as "Spanish G,"
LOUIS APICELLA,
    also known as "Lou Ap,"
AMMAR AWAWDEH,
    also known as "Flapper Poker"
    and "Flappy,"
SAUL BECHER,
CHAUNCEY BILLUPS,
MATTHEW DADDINO,
    also known as "Matty" and
    "The Wrestler,"
ERIC EARNEST,
    also known as "Spook,"
LEE FAMA,
JOHN GALLO,
MARCO GARZON,
THOMAS GELARDO,
    also known as "Juice,"
JAMIE GILET,
TONY GOODSON,
    also known as "Black Tony,"
KENNY HAN,
SHANE HENNEN,
    also known as "Sugar,"
OSMAN HOTI
    also known as "Albanian Bruce"
    and "Big Bruce,"
HORATIO HU,
    also known as "H,"
ZHEN HU,
    also known as "Jonathan Chan,"
    Jonathan Hu," "Scruli" and
    "Stanley,"

<u>I N D I C T M E N T</u>

**1:25-cr-00314-JMA-CHK**

Cr. No. _____
(T. 18, U.S.C., §§ 924(d)(1),
981(a)(1)(C), 982(a)(1), 982(b)(1), 1349,
1951(a), 1955(a), 1955(d), 1956(h), 2
and 3551 <u>et seq.</u>; T. 21, U.S.C., § 853(p);
T. 28, U.S.C., § 2461(c))

DAMON JONES,
  also known as "Dee Jones,"
JOSEPH LANNI,
JOHN MAZZOLA,
  also known as "John South,"
CURTIS MEEKS,
  also known as "Curt,"
NICHOLAS MINUCCI,
MICHAEL RENZULLI,
ANGELO RUGGIERO, JR.,
ANTHONY SHNAYDERMAN,
  also known as "Doc,"
ROBERT STROUD,
  also known as "Black Rob,"
SETH TRUSTMAN,
SOPHIA WEI,
  also known as "Pookie," and
JULIUS ZILIANI,
  also known as "Jay,"

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

## INTRODUCTION

    At all times relevant to this Indictment unless otherwise indicated:

    1.  Beginning in at least 2019, the defendants and their co-conspirators engaged in a complex fraud scheme to rig, or cheat at, illegal poker games in the Eastern District of New York and throughout the United States (the "Rigged Poker Scheme" or the "Scheme"). The defendants and their co-conspirators carried out the Rigged Poker Scheme by manipulating certain poker games at otherwise non-rigged, or "straight," illegal poker games, including weekly poker games occurring at locations on Washington Place (the "Washington Place Game") and Lexington Avenue (the "Lexington Avenue Game") in Manhattan, New York. The Washington Place Game and Lexington Avenue Game were "on record" with, and operated

with the express permission and approval of, members and associates of certain organized crime families of La Cosa Nostra, who provided support and protection for the games and collected owed debts from the games in exchange for a portion of the illegal gambling proceeds.

        2.      Victims of the Rigger Poker Scheme (the "Victims") believed they were participating in "straight" illegal poker games and that they were gambling against other participants on equal footing.  In reality, however, the defendants and their co-conspirators, who constituted the remaining participants purportedly playing in the poker games, worked together on cheating teams (collectively, the "Cheating Teams") that used advanced wireless technologies to read the cards dealt in each poker hand and relay that information to the defendants and co-conspirators participating in the illegal poker games (collectively, the "Rigged Games").  The defendants and their co-conspirators then bet accordingly to ensure that the unsuspecting Victims lost money.  Through the Rigged Poker Scheme, the defendants and their co-conspirators defrauded Victims of millions of dollars.

THE DEFENDANTS

        3.      The defendant ERNEST AIELLO was a resident of Wantagh, New York, and a member of the Bonanno Crime Family of La Cosa Nostra (the "Bonanno Crime Family").

        4.      The defendant NELSON ALVAREZ, also known as "Spanish G," was a resident of Uniondale, New York, and a member of the Cheating Teams.

        5.      The defendant LOUIS APICELLA, also known as "Lou Ap," was a resident of New Rochelle, New York, an associate of the Gambino Crime Family of La Cosa Nostra (the "Gambino Crime Family") and a member of the Cheating Teams.

        6.      The defendant AMMAR AWAWDEH, also known as "Flapper Poker" and "Flappy," was a resident of Brooklyn, New York, an associate of the Gambino Crime Family

3

and a member of the Cheating Teams.   AWAWDEH was an organizer of the Washington Place Game and, with others, organized Rigged Games at the Washington Place Game, among other places.

7.     The defendant SAUL BECHER was a resident of the Bronx, New York. BECHER was an organizer of the Lexington Avenue Game and, with others, organized Rigged Games at the Lexington Avenue Game, among other places.

8.     The defendant CHAUNCEY BILLUPS was a resident of Oregon and a member of the Cheating Teams.

9.     The defendant MATTHEW DADDINO, also known as "Matty" and "The Wrestler," was a resident of Franklin Square, New York, and was a member of the Genovese Crime Family of La Cosa Nostra (the "Genovese Crime Family").

10.     The defendant ERIC EARNEST, also known as "Spook," was a resident of Missouri and a member of the Cheating Teams.

11.     The defendant LEE FAMA was a resident of Brooklyn, New York, and a member of the Gambino Crime Family.

12.     The defendant JOHN GALLO was a resident of Brooklyn, New York, an associate of the Gambino Crime Family and a member of the Cheating Teams.   GALLO was an organizer of the Washington Place Game.

13.     The defendant MARCO GARZON was a resident of New Jersey and a member of the Cheating Teams.

14.     The defendant THOMAS GELARDO, also known as "Juice," was a resident of Scarsdale, New York, an associate of the Bonanno Crime Family and later an associate of the Genovese Crime Family.

4

15.     The defendant JAMIE GILET was a resident of Jericho, New York, and a member of the Cheating Teams.

16.     The defendant TONY GOODSON was a resident of Georgia. GOODSON worked with others to provide cheating technology to co-conspirators in the Scheme and was also a member of the Cheating Teams.   GOODSON participated in Rigged Games at the Lexington Avenue Game, among other places.

17.     The defendant KENNY HAN was a resident of Queens, New York, and a member of the Cheating Teams.   HAN participated in Rigged Games at the Lexington Avenue Game, among other places.

18.     The defendant SHANE HENNEN, also known as "Sugar," was a resident of Pennsylvania.  HENNEN organized Rigged Games, provided cheating technology to other co-conspirators in the Scheme to use in Rigged Games in exchange for a portion of the criminal proceeds from the Rigged Games, and was also a member of the Cheating Teams.

19.     The defendant OSMAN HOTI, also known as "Albanian Bruce" and "Big Bruce," was a resident of New Jersey and provided security at the Lexington Avenue Game.

20.     The defendant HORATIO HU, also known as "H," was a resident of Queens, New York, and a member of the Cheating Teams.

21.     The defendant ZHEN HU, also known as "Jonathan Chan," Jonathan Hu," "Scruli" and "Stanley," was a resident of Brooklyn, New York.   ZHEN HU was an organizer of the Lexington Avenue Game and, with others, organized Rigged Games at the Lexington Avenue Game, among other places.

22.     The defendant DAMON JONES, also known as "Dee Jones," was a resident of Texas and a member of the Cheating Teams.

23.     The defendant JOSEPH LANNI was a resident of Staten Island, New York, and a member and captain in the Gambino Crime Family.

24.     The defendant JOHN MAZZOLA, also known as "John South," was a resident of Georgia and a member of the Cheating Teams.

25.     The defendant CURTIS MEEKS, also known as "Curt," was a resident of Texas.   MEEKS worked with others to provide cheating technology to participants in the Scheme.

26.     The defendant NICHOLAS MINUCCI was a resident of East Northport, New York, an associate of the Gambino Crime Family and a member of the Cheating Teams.

27.     The defendant MICHAEL RENZULLI was a resident of Islip, New York, and a member of the Cheating Teams.

28.     The defendant ANGELO RUGGIERO, JR. was a resident of Howard Beach, New York, and was a member of the Gambino Crime Family.

29.     The defendant ANTHONY SHNAYDERMAN, also known as "Doc," was a resident of Brooklyn, New York.   SHNAYDERMAN laundered criminal proceeds from the Rigged Poker Scheme.

30.     The defendant ROBERT STROUD, also known as "Black Rob," was a resident of Kentucky.   STROUD organized Rigged Games, provided cheating technology to other participants in the Scheme to use in Rigged Games in exchange for a portion of the criminal proceeds, and was also a member of the Cheating Teams.

31.     The defendant SETH TRUSTMAN was a resident of Queens, New York, an associate of the Lucchese Crime Family of La Cosa Nostra and a member of the Cheating Teams.   TRUSTMAN was an organizer of the Lexington Avenue Game and, with others,

6

organized Rigged Games and illegal poker games at the Lexington Avenue Game, among other places.

32.     The defendant SOPHIA WEI, also known as "Pookie," was a resident of Queens, New York, and a member of the Cheating Teams.

33.     The defendant JULIUS ZILIANI, also known as "Jay," was a resident of New Jersey and a member of the Bonanno Crime Family.

### THE RIGGED POKER SCHEME

34.     The defendants AMMAR AWAWDEH, ZHEN HU, ROBERT STROUD and SETH TRUSTMAN, together with others, organized and participated in Rigged Games, as well as "square" illegal poker games at various locations in New York City, including the Washington Place Game and the Lexington Avenue Game, and at other locations throughout the United States including East Hampton, New York.

35.      The defendants TONY GOODSON, SHANE HENNEN, CURTIS MEEKS and ROBERT STROUD, together with others, supplied other defendants and their co-conspirators in the Scheme with cheating technology.

36.     On numerous occasions, certain defendants and their co-conspirators invited the Victims, who were often wealthy, to Rigged Games.   To attract the Victims, in some instances, well-known former professional athletes participated in the Rigged Poker Scheme and were referred to as "Face Cards."   The Face Cards were members of the Cheating Teams and received a portion of the criminal proceeds in exchange for their participation in the Scheme. The defendants CHAUNCEY BILLUPS and DAMON JONES, both of whom are former professional basketball players, were Face Cards and members of the Cheating Teams.

37.    At the Rigged Games, the members of the Cheating Teams—including the defendants and their co-conspirators—used card shuffling machines that were purportedly randomly shuffling the playing cards to ensure fairness (the "Rigged Shuffling Machines"). However, the Rigged Shuffling Machines were secretly altered to use concealed technology to read the cards in the deck, predict which player at the table had the best poker hand, and relay that information via interstate wires to an off-site operator (the "Operator").   The Operator then communicated that information by cellular telephone to a member of the Cheating Team seated at the Rigged Game poker tables, referred to as the "Quarterback" or "Driver," who used secret signaling to share the information with the other members of the Cheating Teams playing in the Rigged Games.   The Cheating Teams used the information from the Quarterback to defraud the Victims, who believed they were playing "straight" illegal poker games.   At times, the defendants also utilized other cheating technologies such as electronic poker chip trays that could secretly read cards placed on the poker table; card analyzers that utilized technology loaded onto decoy cellular telephones that could surreptitiously detect which cards were on the table; and playing cards that had markers visible only to individuals wearing specially designed contact lenses or sunglasses.

38.    With respect to poker games held in the New York City area, members and associates of the Bonanno, Gambino and Genovese Crime Families, used threats and intimidation to assure payment of debts from the Rigged Games and the "square" illegal poker games organized by the defendants AMMAR AWAWDEH, ZHEN HU, ROBERT STROUD and SETH TRUSTMAN and their co-conspirators, as well as to "protect" the games from competition and other potential threats.   In exchange, members and associates of the Bonanno, Gambino and Genovese Crime Families received portions of the proceeds from the Rigged

8

Games and the "square" illegal poker games. The defendants ERNEST AIELLO, THOMAS GELARDO and JULIUS ZILIANI received proceeds on behalf of the Bonanno Crime Family. The defendants JOHN GALLO, LEE FAMA, JOSEPH LANNI and ANGELO RUGGIERO, JR., received proceeds on behalf of the Gambino Crime Family. The defendant MATTHEW DADDINO received proceeds on behalf of the Genovese Crime Family. In addition to receiving proceeds from the Rigged Games and "square" illegal poker games, certain members and associates of the Gambino Crime Family participated on Cheating Teams, including the defendants AMMAR AWAWDEH, LOUIS APICELLA, GALLO and NICHOLAS MINUCCI.

39.     To conceal the nature and extent of the Rigged Poker Scheme, as well as the proceeds from "square" illegal poker games, the defendants and their co-conspirators laundered their criminal proceeds through shell companies and third parties. The defendant ANTHONY SHNAYDERMAN and his associates and entities laundered the proceeds from the Rigged Games and the "square" illegal poker games for other defendants and their co-conspirators. In exchange for a fee, SHNAYDERMAN received payments from Victims of the Rigged Games and the "square" illegal poker games and provided cash or other forms of payment, such as cryptocurrency, to the defendants, including, among others, the defendants AMMAR AWAWDEH, ROBERT STROUD and SETH TRUSTMAN. The defendants also sent SHNAYDERMAN proceeds from the Rigged Games and "square" illegal poker games through wire transfers and other means, which SHNAYDERMAN, for a fee, converted to cash for the defendants.

40.     For example, in furtherance of the Rigged Poker Scheme, in or around April 2019, several of the defendants participated in Rigged Games in Las Vegas, Nevada, at which they defrauded Victims of at least $50,000. The defendants CHAUNCEY BILLUPS,

ERIC EARNEST, JAMIE GILET, ROBERT STROUD and SOPHIA WEI organized and participated in these Rigged Games using a Rigged Shuffling Machine supplied by STROUD.

      41.    As another example, in or around June and July 2023, several of the defendants participated in Rigged Games at the Lexington Avenue Game, at which they defrauded John Doe #1, an individual whose identity is known to the Grand Jury, of approximately $1.8 million.   The defendants AMMAR AWAWDEH, JOHN GALLO, MARCO GARZON, KENNY HAN, ZHEN HU, JOHN MAZZOLA and SETH TRUSTMAN organized and participated in the games involving John Doe #1 using a Rigged Shuffling Machine supplied by the defendants TONY GOODSON and ROBERT STROUD.   The defendants ERNEST AIELLO, MATTHEW DADDINO, LEE FAMA, JOHN GALLO, THOMAS GELARDO and JULIUS ZILIANI received a portion of the criminal proceeds from the games involving John Doe #1 on behalf of the Bonanno, Gambino and Genovese Crime Families.   The defendant ANTHONY SHNAYDERMAN and his co-conspirators laundered at least $100,000 of the criminal proceeds from the games involving John Doe #1.

      42.    As another example, in or about June 2023, several of the defendants participated in Rigged Games in East Hampton, New York, at which they defrauded John Doe #2 and John Doe #3, individuals whose identities are known to the Grand Jury, of at least $46,500 and $105,000, respectively.   The defendants LOUIS APICELLA, AMMAR AWAWDEH, JOHN GALLO, TONY GOODSON, KENNY HAN, OSMAN HOTI, HORATIO HU, JOHN MAZZOLA, NICHOLAS MINUCCI and ROBERT STROUD organized and participated in the Rigged Games involving John Doe #2 and John Doe #3 using a Rigged Shuffling Machine supplied by GOODSON and STROUD.   The defendant ANTHONY

SHNAYDERMAN and his co-conspirators laundered criminal proceeds from the Rigged Games involving John Doe #2 and John Doe #3.

43.     As another example, in or about September 2024, several of the defendants participated in Rigged Games in Miami, Florida, at which they defrauded John Doe #4, an individual whose identity is known to the Grand Jury, of at least $60,000. The defendants NELSON ALVAREZ, JAMIE GILET, TONY GOODSON, KENNY HAN, JOHN MAZZOLA, MICHAEL RENZULLI and ROBERT STROUD organized and participated in the Rigged Games involving John Doe #4 using a Rigged Shuffling Machine supplied by GOODSON and STROUD. The defendant ANTHONY SHNAYDERMAN laundered criminal proceeds from the Rigged Games involving John Doe #4.

44.     Overall, from approximately April 2019 through the present, the Rigged Poker Scheme caused losses to the Victims of at least $7,150,000.

45.     On several occasions, the defendants and their co-conspirators used threats of force and violence to secure the repayment of debts from illegal poker games. Among other instances, in or about and between November 2022 and February 2023, the defendants THOMAS GELARDO, ZHEN HU and JULIUS ZILIANI conspired to and did extort John Doe #5, an individual whose identity is known to the Grand Jury, to secure the repayment of debt from illegal poker games. Similarly, in or about and between September 2023 and October 2023, the defendants SAUL BECHER, ZHEN HU and SETH TRUSTMAN conspired to and did extort John Doe #6, an individual whose identity is known to the Grand Jury, to secure the repayment of debt from illegal poker games.

46.     In addition, on one occasion, several of the defendants conspired to steal a Rigged Shuffling Machine from John Doe #7, an individual whose identity is known to the

11

Grand Jury, who had previously supplied Rigged Shuffling Machines. Specifically, on or about September 7, 2023, the defendants AMMAR AWAWDEH, OSMAN HOTI, JOHN MAZZOLA, NICHOLAS MINUCCI and ROBERT STROUD conspired to commit and committed a gunpoint robbery of John Doe #7 to steal a specific model of Rigged Shuffling Machine from John Doe #7 that the defendants wanted to use in the illegal poker games.

COUNT ONE
(Wire Fraud Conspiracy)

47. The allegations contained in paragraphs one through 46 are realleged and incorporated as if fully set forth in this paragraph.

48. In or about and between April 2019 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERNEST AIELLO, NELSON ALVAREZ, also known as "Spanish G," LOUIS APICELLA, also known as "Lou Ap," AMMAR AWAWDEH, also known as "Flapper Poker" and "Flappy," SAUL BECHER, CHAUNCEY BILLUPS, MATTHEW DADDINO, also known as "Matty" and "The Wrestler," ERIC EARNEST, also known as "Spook," LEE FAMA, JOHN GALLO, MARCO GARZON, THOMAS GELARDO, also known as "Juice," JAMIE GILET, TONY GOODSON, also known as "Black Tony," KENNY HAN, SHANE HENNEN, also known as "Sugar," HORATIO HU, also known as "H," ZHEN HU, also known as "Jonathan Chan," "Jonathan Hu," "Scruli" and "Stanley," DAMON JONES, also known as "Dee Jones," JOHN MAZZOLA, also known as "John South," CURTIS MEEKS, also known as "Curt," NICHOLAS MINUCCI, MICHAEL RENZULLI, ANGELO RUGGIERO, JR., ANTHONY SHNAYDERMAN, also known as "Doc," ROBERT STROUD, also known as "Black Rob," SETH TRUSTMAN, SOPHIA WEI, also known as "Pookie," and JULIUS ZILIANI, also known as "Jay," together with others, did knowingly and intentionally conspire to devise a

12

scheme and artifice to defraud the Victims, including John Doe #1, John Doe #2, John Doe #3 and John Doe #4, and to obtain money and property from the Victims by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### COUNT TWO
(Operation of an Illegal Gambling Business – Washington Place Game)

49.     The allegations contained in paragraphs one through 46 are realleged and incorporated as if fully set forth in this paragraph.

50.     In or about and between January 2021 and October 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AMMAR AWAWDEH, also known as "Flapper Poker" and "Flappy," MATTHEW DADDINO, also known as "Matty" and "The Wrestler," LEE FAMA, JOHN GALLO, JOSEPH LANNI, NICHOLAS MINUCCI, MICHAEL RENZULLI and ANGELO RUGGIERO, JR., together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal poker games located in and around Washington Place, New York, New York, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05, and 20.00, and which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous

operation for one or more periods in excess of thirty days and had a gross revenue of at least $2,000 in one or more single days.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

COUNT THREE
(Operation of an Illegal Gambling Business – Lexington Avenue Game)

51.     The allegations contained in paragraphs one through 46 are realleged and incorporated as if fully set forth in this paragraph.

52.     In or about and between January 2022 and October 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERNEST AIELLO, SAUL BECHER, THOMAS GELARDO, also known as "Juice," TONY GOODSON, also known as "Black Tony," KENNY HAN, OSMAN HOTI, also known as "Albanian Bruce" and "Big Bruce," ZHEN HU, also known as "Jonathan Chan," "Jonathan Hu," "Scruli" and "Stanley," SETH TRUSTMAN and JULIUS ZILIANI, also known as "Jay," together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal poker games located in and around Lexington Avenue, New York, New York, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05, and 20.00, and which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for one or more periods in excess of thirty days and had a gross revenue of at least $2,000 in one or more single days.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

14

## COUNT FOUR
(Money Laundering Conspiracy)

53.     The allegations contained in paragraphs one through 46 are realleged and incorporated as if fully set forth in this paragraph.

54.     In or about and between April 2019 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NELSON ALVAREZ, also known as "Spanish G," LOUIS APICELLA, also known as "Lou Ap," AMMAR AWAWDEH, also known as "Flapper Poker" and "Flappy," SAUL BECHER, CHAUNCEY BILLUPS, MATTHEW DADDINO, also known as "Matty" and "The Wrestler," ERIC EARNEST, also known as "Spook," JOHN GALLO, MARCO GARZON, THOMAS GELARDO, also known as "Juice," JAMIE GILET, TONY GOODSON, also known as "Black Tony," KENNY HAN, SHANE HENNEN, also known as "Sugar," HORATIO HU, also known as "H," ZHEN HU, also known as "Jonathan Chan," "Jonathan Hu," "Scruli" and "Stanley," DAMON JONES, also known as "Dee Jones," JOHN MAZZOLA, also known as "John South," CURTIS MEEKS, also known as "Curt," NICHOLAS MINUCCI, MICHAEL RENZULLI, ANTHONY SHNAYDERMAN, also known as "Doc," ROBERT STROUD, also known as "Black Rob," SETH TRUSTMAN, SOPHIA WEI, also known as "Pookie," and JULIUS ZILIANI, also known as "Jay," together with others, did knowingly and intentionally conspire:

(a)     to conduct one or more financial transactions, to wit: transactions in and affecting interstate and foreign commerce and transactions involving the use of a financial institution that is engaged in, and the activities of which affect, interstate and foreign commerce, which transactions involved the proceeds of one or more specified unlawful activities, to wit: (i) wire fraud, in violation of Title 18, United States Code, Section 1343; and (ii) the operation of

illegal gambling businesses, in violation of Title 18, United States Code, Section 1955, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of the specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b)      to engage in one or more monetary transactions within the United States in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, in criminally derived property of a value greater than $10,000 and derived from one or more specified unlawful activities, to wit: (i) wire fraud, in violation of Title 18, United States Code, Section 1343; and (ii) the operation of illegal gambling businesses, in violation of Title 18, United States Code, Section 1955, contrary to Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

COUNT FIVE
(Hobbs Act Extortion Conspiracy – John Doe #5)

55.      The allegations contained in paragraphs one through 46 are realleged and incorporated as if fully set forth in this paragraph.

56.      In or about and between November 2022 and February 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS GELARDO, also known as "Juice," ZHEN HU, also known as "Jonathan Chan," "Jonathan Hu," "Scruli" and "Stanley," and JULIUS ZILIANI, also known as "Jay" together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: United States currency, from John Doe #5 with

his consent, which consent was induced by wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT SIX
(Hobbs Act Robbery Conspiracy – John Doe #7)

57.    The allegations contained in paragraphs one through 46 are realleged and incorporated as if fully set forth in this paragraph.

58.    On or about September 7, 2023, within the Eastern District of New York and elsewhere, the defendants AMMAR AWAWDEH, also known as "Flapper Poker" and "Flappy," OSMAN HOTI, also known as "Albanian Bruce" and "Big Bruce," JOHN MAZZOLA, also known as "John South," NICHOLAS MINUCCI and ROBERT STROUD, also known as "Black Rob," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: the robbery of a Rigged Shuffling Machine from John Doe #7.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT SEVEN
(Hobbs Act Extortion Conspiracy – John Doe #6)

59.    The allegations contained in paragraphs one through 46 are realleged and incorporated as if fully set forth in this paragraph.

60.    In or about and between September 2023 and October 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SAUL BECHER, ZHEN HU, also known as "Jonathan Chan," "Jonathan Hu," "Scruli" and "Stanley," and SETH TRUSTMAN, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and

17

commodities in commerce, by extortion, in that the defendants and others obtained property, to

wit: United States currency, from John Doe #6 with his consent, which consent was induced by

wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNT ONE

61.     The United States hereby gives notice to the defendants charged in Count

One that, upon their conviction of such offense, the government will seek forfeiture in

accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States

Code, Section 2461(c), which require any person convicted of such offense to forfeit any

property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly

as a result of such offense.

62.     If any of the above-described forfeitable property, as a result of any act or

omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS TWO AND THREE

63. The United States hereby gives notice to the defendants charged in Counts Two and Three that, upon their conviction of either of those offenses, the government will seek forfeiture in accordance with: (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses; and (b) Title 18, United States Code, Section 1955(d), which provides for the forfeiture of any property, including money, used in violation of Title 18, United States Code, Section 1955.

64. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided

without difficulty;

19

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT FOUR

65.     The United States hereby gives notice to the defendants charged in Count Four that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

66.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

Type text here

20

property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS FIVE THROUGH SEVEN

67.     The United States hereby gives notice to the defendants charged in Counts Five through Seven that, upon their conviction of any of such offenses, the government will seek forfeiture in accordance with: (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which requires any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses; and (b) Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, 2461(c), which require the forfeiture of any firearm or ammunition involved in or used in any violation of any other criminal law of the United States.

68.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendants up to the value of the forfeitable property

described in this forfeiture allegation.

(Title 18, United States Code, Sections 924(d)(1) and 981(a)(1)(C); Title 21,

United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

FOREPERSON

*By David Pitluck, Assistant U.S. Attorney*

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

AO 467 (Rev. 01/09) Order Requiring a Defendant to Appear in the District Where Charges are Pending and Transferring Bail

# UNITED STATES DISTRICT COURT
for the

District of Nevada

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No.   2:25-mj-00755-EJY |
| | ) | |
| DAMON JONES | ) | Charging District:   Eastern District of New York |
| _Defendant_ | ) | Charging District's Case No.   1:25-cr-00314-JMA |

## ORDER REQUIRING A DEFENDANT TO APPEAR IN THE DISTRICT
## WHERE CHARGES ARE PENDING AND TRANSFERRING BAIL

After a hearing in this court, the defendant is released from custody and ordered to appear in the district court where the charges are pending to answer those charges.  If the time to appear in that court has not yet been set, the defendant must appear when notified to do so.  Otherwise, the time and place to appear in that court are:

| Place:   AS ORDERED | Courtroom No.:  AS ORDERED |
|---|---|
| | Date and Time: |

The clerk is ordered to transfer any bail deposited in the registry of this court to the clerk of the court where the charges are pending.

Date:        10/23/2025

_____
_Judge's signature_

_____
Elayna Youchah, U.S. Magistrate Judge
_Printed name and title_

FILED
ENTERED

OCT 23 2025

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

DAMON JONES,

        Defendant.

CASE NO.: 2:25-MJ-00755-EJY

## <u>ORDER APPOINTING COUNSEL</u>

The individual named below, having testified under oath or having otherwise satisfied this Court that he: (1) is financially unable to employ counsel and (2) does not wish to waive counsel, and, because the interests of justice so require, the Court finds that the individual is indigent, therefore,

**IT IS ORDERED** that the Federal Public Defender for the District of Nevada is hereby appointed to represent DAMON JONES.

**IT IS FURTHER ORDERED** that the Clerk issue subpoenas upon oral request and submission of prepared subpoenas by the attorneys of the Office of the Federal Public Defender, unless said subpoenas are to be served outside the State of Nevada. The cost of process, fees and expenses of witnesses so subpoenaed shall be paid as witness(es) and the United States Marshal shall provide such witness(es) subpoenaed advance funds for the purpose of travel within the District of Nevada and subsistence. Any subpoenas served on behalf of the individual, the return thereon to this Court shall be sealed, unless otherwise ordered.

**IT IS FURTHER ORDERED** that if counsel for the individual desires subpoenas to be served outside the State of Nevada, further application pursuant to Federal Rules of Criminal Procedure 17(b) shall be made to the Court, before the issuance of said subpoenas.

DATED: October 23, 2025.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

Federal Public Defender's Office appearance by:   JONELL THOMAS

# UNITED STATES DISTRICT COURT

for the

District of Nevada

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| DAMON JONES | )  Case No.  2:25-mj-0755-EJY |
| | ) |
| *Defendant* | ) |

## APPEARANCE BOND

### Defendant's Agreement

I, _____ DAMON JONES _____ *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

      ( X )    to appear for court proceedings;

      ( X )    if convicted, to surrender to serve a sentence that the court may impose; or

      ( X )    to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

( X ) (1)  This is a personal recognizance bond.

(    ) (2)  This is an unsecured bond of $ _____ .

(    ) (3)  This is a secured bond of $ _____ , secured by:

    (    )  (a) $ _____ , in cash deposited with the court.

    (    )  (b) the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it — such as a lien, mortgage, or loan — and attach proof of ownership and value)*:

        If this bond is secured by real property, documents to protect the secured interest may be filed of record.

    (    )  (c) a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety)*:

### Forfeiture or Release of the Bond

*Forfeiture of the Bond.*  This appearance bond may be forfeited if the defendant does not comply with the above agreement.  The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement.  At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

# UNITED STATES DISTRICT COURT
## for the
### District of Nevada

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.   2:25-mj-0755-EJY |
| **DAMON JONES** | ) | |
| | ) | |
| *Defendant* | ) | |

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1) The defendant must not violate federal, state, or local law while on release.

(2) The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.

(3) The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4) The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

    The defendant must appear at: _____
                                                              *Place*

    on _____
                                             *Date and Time*

    If blank, defendant will be notified of next appearance.

(5) The defendant must sign an Appearance Bond, if ordered.

AO 199B (Rev. 09/24) Additional Conditions of Release                                    Page __3__ of __5__ Pages

## ADDITIONAL CONDITIONS OF RELEASE

Pursuant to 18 U.S.C. § 3142(c)(1)(B), the court may impose the following least restrictive condition(s) only as necessary to reasonably assure the appearance of the person as required and the safety of any other person and the community.

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

( ☐ ) (6)  The defendant is placed in the custody of:
        Person or organization _____
        Address *(only if above is an organization)* _____
        City and state _____  Tel. No. _____

who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

        Signed: _____  _____
                               *Custodian*                     *Date*

( ☑ ) (7)  The defendant must:
  ( ☑ ) (a)  submit to supervision by and report for supervision to the  ☑ **U.S. Pretrial Services Office** ☑ Las Vegas 702-464-5630  ☐ Reno 775-686-5964
      no later than _____  ☐ **U.S. Probation Office**  ☐ Las Vegas 702-527-7300  ☐ Reno 775-686-5980
  ( ☑ ) (b)  continue or actively seek employment.
  ( ☐ ) (c)  continue or start an education program.
  ( ☑ ) (d)  surrender any passport to:  Pretrial Services, once a legal secondary form of ID is obtained. Obtain within 30 days of arrival in TX
  ( ☐ ) (e)  not obtain a passport or other international travel document.
  ( ☑ ) (f)  abide by the following restrictions on personal association, residence, or travel:  Maintain residence with mother and do not move
      w/o permission from Pretrial Services or the Court. Travel restricted to SDTX unless permitted by Pretrial Services and EDNY for court
  ( ☑ ) (g)  avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution,
      including:  Co-defendants, unless in the presence of counsel. Avoid all contact with reasonably known co-conspirators, alleged victims,
      and members of "La Cosa Nostra"
  ( ☐ ) (h)  get medical or psychiatric treatment: _____
  ( ☐ ) (i)  return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling,
      or the following purposes: _____
  ( ☐ ) (j)  maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers
      necessary.
  ( ☑ ) (k)  not possess a firearm, destructive device, or other weapon. Remove within 72 hours of return to TX
  ( ☐ ) (l)  not use alcohol ( ☐ ) at all ( ☐ ) excessively.
  ( ☐ ) (m)  not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed
      medical practitioner.
  ( ☐ ) (n)  submit to testing for a prohibited substance, if required by the pretrial services office or supervising officer. Testing may be used with
      random frequency and may include urine testing, wearing a sweat patch, submitting to a breathalyzer, and/or any other form of
      prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and
      accuracy of substance screening or testing of prohibited substances.
  ( ☐ ) (o)  participate in a program of inpatient or outpatient substance use treatment, if directed by the pretrial services office or supervising
      officer.
  ( ☐ ) (p)  participate in the remote alcohol testing program using continuous electronic alcohol testing and comply with its requirements as
      directed, including not consuming alcohol.
      ( ☐ ) pay all or part of the cost of remote alcohol testing, including equipment loss or damage, based upon your ability to pay, as
        determined by the pretrial services or supervising officer.
  ( ☐ ) (q)  participate in the location monitoring program and comply with the requirements, as directed in subsections i, ii, and iii.

      i. Following the location restriction component (**check one**):

      ( ☐ ) (1)  **Curfew.** You are restricted to your residence every day ( ☐ ) from _____ to _____ , or ( ☐ ) as
            directed by the pretrial services office or supervising officer; or
      ( ☐ ) (2)  **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services;
            medical, substance use, or mental health treatment; attorney visits; court appearances; court-ordered obligations; activities
            approved by the court; or essential activities approved in advance by the pretrial services office or supervising officer; or
      ( ☐ ) (3)  **Home Incarceration.** You are restricted to 24-hour-a-day lockdown at your residence except for medical necessities and
            court appearances or activities specifically approved by the court; or
      ( ☐ ) (4)  **Stand-Alone Monitoring.** You have no residential component (curfew, home detention, or home incarceration) restrictions.
            However, you must comply with the location or travel restrictions as imposed by the court. **Note:** Stand-alone monitoring
            should be used in conjunction with global positioning system (GPS) or virtual mobile application technology.

## ADDITIONAL CONDITIONS OF RELEASE

    (ii)  submit to the following location monitoring technology (**check one**):

        ( ☐ ) (1)   Location monitoring technology as directed by the pretrial services or supervising officer; or
        ( ☐ ) (2)   GPS; or
        ( ☐ ) (3)   Radio Frequency; or
        ( ☐ ) (4)   Voice Recognition; or
        ( ☐ ) (5)   Virtual Mobile Application. You must allow the pretrial services or supervising officer to conduct initial and periodic inspections of the mobile device and mobile application to verify that 1) the monitoring software is functional, 2) the required configurations (e.g., locational services) are unaltered, and 3) no efforts have been made to alter the mobile application.

    (iii)  ( ☐ ) pay all or part of the cost of location monitoring, including equipment loss or damage, based upon your ability to pay, as determined by the pretrial services or supervising officer

( ☐ )  (r)  report as soon as possible, to the pretrial services or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

( ☑ )  (s)  Other:

      Refrain from gambling or entering any establishment who's primary business is gambling activities, and online gambling.

      Defendant is prohibited from transferring assets greater than $10,000.00 without permission of the Court or Pretrial Services, except as it pertains to retaining counsel

      If weapons or dangerous devices are removed from Defendant's residence, Defendant must provide written proof of removal to Pretrial Services.

( ☐ )  (8)  The defendant is released on the conditions previously imposed.

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:  *Damon Jones*

### YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year.  This sentence will be consecutive (*i.e.,* in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court.  The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed.  If you are convicted of:

(1)  an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2)  an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3)  any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4)  a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive.  In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
*Defendant's Signature*

HOUSTON TX
_____
*City and State*

### Directions to the United States Marshal

( X )  The defendant is ORDERED released after processing.

(    )  The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date:  10/23/25

_____
*Judicial Officer's Signature*

Elayna Youchah, U.S. Magistrate Judge
_____
*Printed name and title*

DISTRIBUTION:    COURT    DEFENDANT    PRETRIAL SERVICE    U.S. ATTORNEY    U.S. MARSHAL



RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
JONELL THOMAS
Asst. Federal Public Defender
Nevada State Bar No. 4771
JoNell_Thomas@fd.org
411 E. Bonneville Ave, #250
Las Vegas Nevada 89101
(702) 388-6577
Counsel for DAMON JONES

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
* * *

UNITED STATES OF AMERICA,

Plaintiff,

v.

DAMON JONES,

Defendant.

Case No. 25-mj-00754-EJY/25-mj-00755-EJY

**ASSERTION OF RIGHTS TO COUNSEL, TO REMAIN SILENT, AND TO HAVE COUNSEL PRESENT DURING QUESTIONING**

I assert my rights, pursuant to the decision of the United States Supreme Court in *Montejo v. Louisiana*, 556 U.S. 778 (2009) and the Fifth and Sixth Amendments, to remain silent and to have counsel appointed on my behalf. This assertion serves as formal notice to government counsel and all relevant government agencies and departments that I also exercise my right to have counsel present during any interrogation or questioning conducted by any law enforcement or prosecutor or any other person on their behalf. I do not consent to the initiation of such questioning without the presence of counsel.

Dated: October 23, 2025

DAMON JONES
Defendant

JoNell Thomas
Assistant Federal Public Defender



RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
JONELL THOMAS
Asst. Federal Public Defender
Nevada State Bar No. 4771
JoNell_Thomas@fd.org
411 E. Bonneville Ave, #250
Las Vegas Nevada 89101
(702) 388-6577
Counsel for DAMON JONES

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
### * * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 25-mj-00754-EJY/25-mj-00755-EJY |
| Plaintiff, | |
| v. | **ASSERTION OF RIGHT TO BE PRESENT IN COURT UNSHACKLED** |
| DAMON JONES, | |
| Defendant. | |

    I assert my Fifth and Sixth Amendment Rights to be present in court without shackles. Appearing in court without shackles is necessary to maintain dignity and decorum in the judicial process. This Assertion serves as a standing declaration of my right to appear in court unshackled at all future appearances, without the need for me to reassert these rights

    The Court cannot institute a policy requiring defendants to be always shackled. Instead, before I may be shackled for any courtroom proceeding, the Court must make an individualized decision on the record that a specific security need particular to me exists. To order shackling, the Court must make an individualized determination finding that shackling serves a compelling government purpose and the particular shackling method is the least restrictive means for maintaining security and order in

the courtroom. In making this determination, the Court should consider whether evidence exists demonstrating a history of disruptive courtroom behavior, attempts to escape from custody, assaults or attempted assaults while in custody, or a pattern of defiant behavior towards correction officials and judicial authorities. Until the Court makes an individualized determination on the record, I request to appear in court without shackles. The shackling determination must be made in my and my counsel's presence, allowing my counsel to object and create a record.

Dated: October 23, 2025

DAMON JONES
Defendant

JoNell Thomas
Assistant Federal Public Defender

AO 466A (Rev. 12/09) Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
for the

|  |  |
|---|---|
| United States of America | ) |
| v. | ) |
|  | ) Case No. 25-mj-00754-EJY |
| DAMON JONES | ) 25-mj-00755 |
| _____ | ) Charging District's Case No. 1:25-cr-00314-JMA-CHR |
| Defendant | ) 1:25-cr-00323-RPK-JAM |

**FILED** **RECEIVED**
**ENTERED** **SERVED ON**
**COUNSEL/PARTIES OF RECORD**
OCT 23 2025
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)* EASTERN DISTRICT OF N.Y.

I have been informed of the charges and of my rights to:

(1) retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2) an identity hearing to determine whether I am the person named in the charges;

(3) production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4) a preliminary hearing within 14 days of my first appearance if I am in custody and 21 days otherwise — unless I am indicted — to determine whether there is probable cause to believe that an offense has been committed;

(5) a hearing on any motion by the government for detention;

(6) request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☑ an identity hearing and production of the warrant.

☐ a preliminary hearing.

☐ a detention hearing.

☐ an identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled in this district. I request that those hearings be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date: 10/23/2025

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

JONELL THOMAS
*Printed name of defendant's attorney*

RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
HEIDI A. OJEDA
Assistant Federal Public Defender
Nevada State Bar No. 12223
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
(702) 388-6261/Fax
Heidi_Ojeda@fd.org

Attorney for Damon Jones

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:25-mj-00755-EJY |
| Plaintiff, | |
| v. | **NOTICE OF APPEARANCE** |
| DAMON JONES, | |
| Defendant. | |

Pursuant to the Court's order, notice is hereby given that Assistant Federal Public Defender Heidi A. Ojeda will serve as counsel for the above captioned defendant.

Counsel's address is as follows:

      Federal Public Defender
      411 E. Bonneville Ave., Suite 250
      Las Vegas, Nevada 89101

DATED this 30th day of October, 2025.

                  RENE L. VALLADARES
                  Federal Public Defender

      By:  */s/ Heidi A. Ojeda*
                  HEIDI A. OJEDA
                  Assistant Federal Public Defender
                  Attorney for Damon Jones